

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Arthur B. Knickerbocker
Adjutant General of Texas
Austin, Texas

Dear Sir:                    Opinion No. O-7498

Re:  Does the title of Camp Hulen
rest in the State of Texas?
And related questions.

We are in receipt of your letter wherein you submit
the following statements and questions:

"On or about October 1, 1946, Camp Hulen, formerly
used for training National Guard troops of the 36th In-
fantry Division and which camp was taken over by the
federal government during the war, tentatively reverted
to the control of the State of Texas.

"Complete transfer of the camp to the State of
Texas will not be effected until the approval of the
Army Engineer, together with the approval of the autho-
rities of the State of Texas, has been affixed to the
terms of the transfer. This is expected to be accom-
plished within the next few weeks.

"This department is confused as to the exact
status of Camp Hulen, and it is respectfully requested
that your office render an opinion on the following
questions.

"(1)  Does the title of Camp Hulen rest
in the State of Texas?

"(2)  What disposition can the State of
Texas, or its agent the Texas National Guard
Armory Board, make of Camp Hulen in the event
it is not used for training National Guard
troops in the future?

"(3)  Can the facilities of Camp Hulen be
utilized through the National Guard Armory
Board for providing armories for National Guard

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS...

Hon. Arthur B. Knickerbocker, Page 2

units located in nearby cities and towns?
Specifically, can these facilities be removed
from Camp Hulen and located in nearby towns
and cities to be used as armories for Texas
National Guard units?

"(4)  Can the facilities of Camp Hulen
be utilized for Texas National Guard units, or
for any other military purposes, other than
for units of the 36th Infantry Division?

"The present cost of maintenance of Camp Hulen to
the State of Texas is approximately $2,000.00 per month.

"Your opinion on the above question is desired in
order that this department may determine the feasibility
of holding on to Camp Hulen with the view of using it
for the Texas National Guard."

The Trustees of the Palacios National Guard Campsite
Association, predecessors in title in conveying the property
that now constitutes Camp Hulen to the Palacios Campsite Associa-
tion, Inc., retained certain restrictions on the property.  In
the deed of conveyance from the trustees of the Palacios National
Guard Campsite Association, to the Palacios National Guard Camp-
site Association, Inc., dated August 19, 1925, and recorded in
Vol. 74, page 563, of Matagorda County, we find the following
restrictions:

"The consideration for this conveyance is the de-
sire of the grantors and the original owners who have
heretofore conveyed said land to them as trustees for
the purposes and uses hereinafter set forth to encourage
and assist the 36th Division, Texas National Guard and
its successors in the acquisition and maintenance of a
permanent area for its encampment maneuvers and other
military instruction and activities it being understood
that said tracts of land are to be used for said general
purposes; to thus contribute to the efficiency of said
36th Division, Texas National Guard; and for the general
benefits which will inure to the community in general
and the citizens and inhabitants of Palacios and Mata-
gorda County, Texas, by virtue of the construction and

Hon. Arthur B. Knickerbocker, Page 3

maintenance of said military camp and the facilities in
connection therewith and the enhancement in value of the
other property in that vicinity and in the further con-
sideration of the patriotic desire on the part of said
association and its members to assist and have a part
in the maintenance of Texas units of the Nation's second
line of defense.

" . . . .

" . . . . and it is agreed that in the deed of con-
veyance of said property from the PALACIOS CAMPSITE ASSO-
CIATION, INC to the said John A. Hulen, Commanding General
of the 36th Division, Texas National Guard it shall be
stipulated that if at any time during a period of five
years from the date of said deed the State of Texas
should permanently abandon the place of encampment of
the 36th Division, Texas National Guard or its successors
at Palacios, Texas, and that said camp should not during
said time be used for encampment maneuver or other mili-
tary purposes that then and in that event the title to
said property herein conveyed shall revert to the PALACIOS
CAMPSITE ASSOCIATION, INC., with the right of reentry by
proper legal action otherwise the title shall be complete."

The Palacios Campsite Association, Inc., conveyed this
property to John A. Hulen, Commanding Officer of the 36th Divi-
sion, Texas National Guard, and his successors in office in
trust to be conveyed to the State of Texas, at such subsequent
time as the Legislature of the State may enact legislation for
the acceptance of said title by the State. This conveyance was
made on the 10th day of December, 1925, and recorded in Vol.76
on pages 436-41, Deed Records of Matagorda County. This convey-
ance contains practically the same restrictions on titles as
contained in the prior instrument, which reads as follows:

"The consideration for this conveyance is the desire
of the grantor to encourage and assist the 36th Division,
Texas National Guard, and its successors, in the acquisi-
tion and maintenance of a permanent area for its encampment,
maneuvers and other military instruction and activities,
it being understood that said tracts of land are to be used
for said general purposes; to thus contribute to the effi-
ciency of said 36th Division, Texas National Guard; and for
the benefits which will inure to the community in general,
and to the citizens and inhabitants of Palacios and Matagorda

Hon. Arthur B. Knickerbocker, Page 4

County, Texas, by virtue of the construction and mainte-
nance of said military camp and the facilities in connec-
tion therewith, and of the enhancement in value of the
other property in that vicinity; and in the further con-
sideration of the patriotic desire on the part of said
Association and its members to assist and have a part in
the maintenance of the Texas unit of the Nation's second
line of defense.

" . . . . .

"It is understood and agreed, however, that if at any
time during a period of five years from this date, the land
herein conveyed shall be permanently abandoned by the gran-
tee, or by the State of Texas, as the place of encampment
of the said 36th Division, Texas National Guard, or its
successors, or as a military encampment, and should not
during said time be used by any of the units thereof for
encampment, maneuver or other military purposes, that then,
and in that event, the title to said property herein con-
veyed shall revert to the grantor herein, with the right
of re-entry by proper legal action, otherwise the title
shall be absolute."

Senate Concurrent Resolution No. 5 passed by the First
Called Session of the 39th Legislature, and signed by the Gover-
nor on the 6th day of October, 1926, provided as follows:

"Whereas, the Palacios Campsite Association, Incor-
porated, executed and delivered a deed on December 10,
1925, conveying to General John A. Hulen, Commanding
General of the Thirty-sixth Division, Texas National
Guard, twenty tracts of land at or near Palacios, the
same containing in the aggregate about 1875 acres all
in a solid body, the same to be used for the establish-
ment and maintenance of a permanent encampment for the
Texas National Guard, and

" . . . . .

" . . . . .

"That the donation on the part of the Palacios Camp-

Hon. Arthur B. Knickerbocker, Page 5

site Association, Inc., of the lands and premises mentioned herein and described in the deed conveying the property to General John A. Hulen, Commanding General of the Thirty-sixth Division of the Texas National Guard, in trust for the State of Texas, for the use and benefit of the Texas National Guard as a permanent encampment, be and the same is hereby accepted and said trustee is hereby directed to execute and deliver the proper deed conveying said land and premises unto the State for the purpose herein specified . . . ."

In answer to your first question, it is therefore our opinion that the title to the property known as Camp Hulen rests in the State of Texas. The statement, in the instruments of conveyance, in the predecessors in title to the State that, it being understood that said tract of land is to be used for said general purpose, of a permanent area for its encampment, maneuver and other military instruction and activities, is not a restriction upon the State's title, in absence of a forfeiture for failure to so use the property. It may be a moral obligation to use the property as specified by the donor, but is not a legal obligation to be construed as a restriction on the title. For a discussion of this point, see Court of Civil Appeals opinion in Watts v. City of Houston, 196 SW (2) 553. There was a restriction contained in the conveyance in the state's predecessor in title, providing that said area must be used for military purposes and if, at any time during a period of five years from the date of said deed, the State of Texas should permanently abandon the place of encampment, then, in that event, the title to said property shall revert to the grantors, but this restriction is limited to the five year period, immediately succeeding the date of said deed to the State of Texas, which date is October 30, 1926. An opinion by the Commission of Appeals in the case of Spinks v. First Christian Church, 273 S.W. 815 treats such a restriction as a condition precedent, in which the deed lies dormant until it should be vitalized and given life by the performance of this condition precedent. The affirmative action, required of the State to bring the deed in to being happened long ago and the title vested absolute in the State.

In answer to your second question, your attention is again called to the second paragraph of quoted matter under Senate Concurrent Resolution No. 5, passed by the 1st Called Session of the 39th Legislature, supra, wherein the property is accepted by the State for a permanent military encampment. The Legislature in accepting the property for the purposes specified in the above Resolution limits the use of the property to that purpose, until such time as the Legislature sees fit to alter or enlarge the use thereof. Your attention is further called to

Hon. Arthur B. Knickerbocker, Page 6

Subsections (f) and (g) of Section 2, and Section 3, of Article 5890b, respectively, which provide as follows:

"(f) To acquire, by gift or by purchase, for use as building sites or for any other purposes deemed by said Board to be necessary or desirable in connection with or for use of units of the Texas National Guard, property of any and every description, . . . .

"(g) To construct buildings on any of its real property, whether held in fee simple or otherwise, and to furnish and equip the same and to hold, manage and maintain all of said property and to lease to the State of Texas, in the same manner as hereinafter provided with respect to other property, the buildings, and the sites thereon situated, which it may construct at Camps Mabry, Hulen and Wolters, and to lease and sublease, convey and exchange, in whole or in part, all of its property not located in either of said camps, and/or to pledge the rents, issues and profits of all of said property, wherever located, in whole or in part; provided, however, that before any building is constructed by said Board on the lands comprising either of said camps, the site therefor, in maximum area two hundred thousand (200,000) square feet, shall, promptly on said Board's request therefor to the said Adjutant General, be selected and described by a Board of Officers appointed from time to time for the purpose by the said Adjutant General, and such description shall be certified to said Armory Board, and a copy thereof shall be furnished to and preserved in the office of said Adjutant General; and, provided, further, that when so selected and described and constructed upon, such sites shall be and become the property of the said Armory Board, for all the purposes contemplated by the Act of which this section is a part, as fully and absolutely as if the same had been acquired by a gift to or purchase by said Armory Board.

"Sec. 3. As and when any of the property owned by the Board shall be fully paid for, free of all liens, and all debts and other obligations incurred in connection with the acquisition or construction of such property have been fully paid, the Board shall donate, transfer and convey such property, by appropriate instruments of transfer and conveyance, to the State of Texas, and such instruments of transfer and conveyance shall be kept in the custody of the Adjutant General's Department."

Hon. Arthur B. Knickerbocker, Page 7

The title to Camp Hulen is vested in the State of Texas and was so vested when the Texas National Guard Armory Board was created. We construe that portion of Sec. (g) which we have underscored as limiting the general authority of said Board "to lease and sublease, convey and exchange, in whole or in part, all of its property not located in either of said camps" (Mabry, Hulen and Wolters) to conclusively prohibit the Board from in anywise leasing, subleasing, conveying or exchanging in whole or in part any of the property, real or personal, located in either of said camps. The remainder of said section permits the Armory Board to construct buildings on any or all sites of said camps. You orally advised us that the Board has never constructed any building at Camp Hulen.

We have carefully considered not only the above quoted provisions of Article 5890b, but all of said Article creating the Texas National Guard Armory Board, prescribing its powers and duties, and have concluded that Camp Hulen cannot be used for any purpose, other than for training the National Guard, the purpose for which it was acquired, without legislative authority.

From what we have just said, it necessarily follows that your third question is answered in the negative.

We have examined each instrument in the link of title between the trustees who originally obtained this property and the State of Texas, and the resolution of the State accepting it. The purpose and consideration of the donors for the conveyance as stated in the instrument, is, "in the acquisition and maintenance of a permanent area for its encampment, and other military instruction and activities, it being understood that said tracts of land are to be used for said general purposes." The State in accepting said property in the preamble to the resolution used the following expression, "the same to be used for the establishment and maintenance of a permanent encampment for the Texas National Guard, . . ." In the body of the resolution, we find this statement, "for the use and benefit of the Texas National Guard for a permanent encampment, be and the same is hereby accepted. . ."

From the reading of these instruments, the conclusion is inescapable, that it was the intention of both donor and receiver that the property was to be used for the benefit of

Hon. Arthur B. Knickerbocker, Page 8

the Texas National Guard and not exclusively for the 36th Division. It is therefore our opinion that your fourth question is answered in the affirmative.

Trusting that this satisfactorily answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

W. F. Watts
Assistant.

WFW/JWc

APPROVED DEC 4, 1946

FIRST ASSISTANT
ATTORNEY GENERAL